## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| **FORT SILL APACHE TRIBE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 14-958 (RMC)** |
| | ) | |
| **NATIONAL INDIAN GAMING** | ) | |
| **COMMISSION and** | ) | |
| **JONADEV CHAUDHURI,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## OPINION

This action concerns a Notice of Violation issued by the Chairman of the National

Indian Gaming Commission to the Fort Sill Apache Tribe on July 21, 2009, which the Tribe

timely appealed. The Commission has failed to issue a decision on the appeal even though

briefing has been complete for several years. The Tribe seeks injunctive and declaratory relief

under the Administrative Procedure Act. NIGC moves to dismiss. The motion will be granted in

part and denied in part.

## I. FACTS

In April 2009, Fort Sill Apache Tribe (the Tribe) opened a gaming facility known

as the "Apache Homelands Casino" at Akela Flats, Luna County, New Mexico, on land that the

United States had taken into trust for the use and benefit of the Tribe. Compl. [Dkt. 1] ¶¶ 3, 5,

73. The Chairman of National Indian Gaming Commission (NIGC) issued a Notice of Violation

00-35 (NOV) on July 21, 2009, which asserted that the Tribe had violated the Indian Gaming

Regulatory Act, 25 U.S.C. § 2719 (IGRA), by gaming on Indian lands ineligible for gaming. He

ordered the Tribe to cease immediately all gaming operations at Akela Flats. *Id*. ¶¶ 5, 75; *id*.,

Ex. 1 (NOV) at 1, 6.  The NOV cited the potential for civil fines of up to $25,000 per day if the Apache Homelands Casino remained open.  Compl. ¶ 78; NOV at 6.  The Tribe timely sought review of the NOV.  Compl. ¶ 10.  NIGC proposed to stay any civil fines if the Tribe ceased gaming at Akela Flats pending resolution of the NOV appeal and any subsequent judicial review. *Id*. ¶ 79.  The Tribe agreed and the casino has been closed since 2009.  *Id*. ¶ 80.

NIGC then proposed an expedited appeal procedure: the full Commission would issue a decision based solely the Tribe's initial brief, NIGC's responsive brief, and the Tribe's reply brief and without a hearing before an independent presiding officer.  *Id*. ¶ 83.  On September 9, 2009, the Tribe notified NIGC that it agreed to waive its right to the hearing in exchange for the expedited appeal procedure.  *Id*. ¶ 85.  At that time, NIGC had not informed the Tribe that the State of New Mexico had petitioned to intervene in the Tribe's administrative appeal or that NIGC had decided to permit intervention.  *Id*. ¶ 86-87.  By letter dated September 18, 2009, NIGC advised the Tribe that New Mexico would enjoy full party status in the Tribe's appeal.  *Id*. ¶ 88.  On February 22, 2010, NIGC notified the Tribe, stating that it would not file a responsive brief.  *Id*. ¶ 90.

Briefing was completed by August 26, 2011.  *See* Mot. to Dismiss, Affidavit of Michael C. Hoenig [Dkt. 10-4] (Hoenig Decl.), Ex. 28 ¶ 8.  Subsequently, the Tribe notified NIGC that it was considering seeking a stay of the NOV appeal pending its efforts to make a joint application with New Mexico to the Department of the Interior (DOI) regarding its gaming eligibility.  Pl. Opp'n [Dkt. 16], Declaration of Alan R. Fedman (Fedman Decl.) ¶ 3.  On January 9, 2012, the Tribe's counsel informed NIGC that there would be no joint application to DOI with New Mexico and, therefore, the Tribe would not ask for a stay.  *Id*. ¶ 4.

In early May 2013, the Tribe requested a status conference with Eric Shepard, Acting General Counsel of NIGC, to ask for an expedited decision on the appeal.  *Id*. ¶ 7.  On a March 22, 2013 conference call, Mr. Shepard informed the Tribe that a decision would be issued within a few months of the call.  *Id.* ¶ 9.  In June 2013, the Tribe contacted NIGC about the status of the appeal and Michael Hoenig, a Senior Attorney for NIGC, told the Tribe that the Commission was actively working on the appeal.  *Id.* ¶¶ 2, 10.  On a November 4, 2013 conference call regarding the status of the appeal, Mr. Shepard advised the Tribe that a decision would be issued by the end of 2013.  *Id.* ¶ 12.  No such decision was issued.

The Tribe filed its Complaint on June 6, 2014, advancing claims under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* (APA), based on the Commission's failure to issue a decision on the NOV appeal.  Count One cites Section 706(1) and alleges that "[b]y failing to issue a decision within the time required by its own representations, its own regulations and all reasonable standards of administrative procedure, the NIGC has unreasonably delayed and unlawfully withheld a discrete, mandatory action in violation of the APA."  Compl. ¶ 103. The Tribe asks the Court to "compel agency action unlawfully withheld or unreasonably delayed."  *Id.* ¶ 97.  Count Two cites Section 706(2) and alleges that "NIGC's determination, and subsequent affirmation by inaction, that Akela Flats is ineligible for gaming under IGRA, is arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, and without observance of procedure required by law" and should be invalidated.  *Id.* ¶¶ 105, 120.

On September 23, 2014, NIGC moved to dismiss the Complaint for lack of subject matter jurisdiction and for failure to state a claim, and the Tribe opposes.  Mot. to Dismiss [Dkt. 10]; Opp'n [Dkt. 16]; Reply [Dkt. 17].[1]

## II.  STANDARD OF REVIEW

### A.  Rule 12(b)(1) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move to dismiss a complaint, or any portion thereof, for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  When reviewing a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), a court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'"  *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005).

---

[1] On December 16, 2014, the Tribe filed notice of newly discovered facts and submitted a copy of an email sent on November 28, 2014 by Mr. Shepard to Anthony Walters, Deputy Chief Counsel, Senate Committee on Indian Affairs.  *See* Notice [Dkt. 18]; *id.*, Ex. 1.  In response to a question by Senator Tom Udall, a member of the Senate Committee on Indian Affairs, Mr. Shepard explained:

> The Commission was working on the decision when the Tribe filed a lawsuit against the Agency in the United States District Court for the District of Columbia.  The Tribe claims that the amount of time that has passed since the Tribe filed its appeal has converted the NOV into a final agency action, and asked the court to decide the merits of the NOV. So as not to interfere with the court's proceedings, the Commission has decided not [to] (sic) issue a decision while the matter is being litigated.  The Commission does, however, stand ready to issue a decision once the litigation is resolved.

*Id.* at 1.  Mr. Shepard cited no legal basis for this position.  NIGC has not filed any response to the Tribe's Notice.

To determine whether it has jurisdiction over the claim, a court may consider materials outside the pleadings. *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005). No action of the parties can confer subject matter jurisdiction on a federal court because subject matter jurisdiction is an Article III and a statutory requirement. *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003). The party claiming subject matter jurisdiction bears the burden of demonstrating that such jurisdiction exists. *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008); *see Kokkonen v. Guardian life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (noting that federal courts are courts of limited jurisdiction and "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.") (internal citations omitted).

**B. Rule 12(b)(6) Motion to Dismiss**

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face. Fed. R. Civ. P. 12(b)(6). A failure to exhaust administrative remedies is properly brought in a Rule 12(b)(6) motion for failure to state a claim. *See Marcelus v. Corr. Corp. of America/Corr. Treatment Facility*, 540 F. Supp 2d. 231, 235 n. 4 (D.D.C. 2008) (collecting cases); *Brown v. McHugh*, 972 F. Supp. 2d 58, 64 (D.D.C. 2013). In such a motion, the defendant bears the burden of proving by a preponderance of the evidence that the plaintiff failed to exhaust mandatory administrative remedies. *See e.g., Hudson v. Children's Nat. Med. Ctr.,* 645 F. Supp. 2d 1, 4 (D.D.C. 2009) (citing *Bowden v. United States,* 106 F.3d 433, 437 (D.C. Cir. 1997)). In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

### III.  ANALYSIS

NIGC argues that the Complaint must be dismissed because (1) the Tribe cannot establish a waiver of sovereign immunity needed to sue a federal agency and its officer and (2) the APA precludes judicial review of the NOV because (a) it is not final agency action and (b) the Tribe has failed to exhaust its administrative remedies.  In opposition, the Tribe argues that the APA provides the requisite waiver of sovereign immunity, that NIGC's continued failure to act makes the NOV the functional equivalent of final agency action, and that the Court can compel NIGC to issue a decision on the Tribe's appeal.  The Court finds that NIGC is subject to suit because the APA provides an express waiver of sovereign immunity that is applicable here. The Court agrees with the Tribe that it has jurisdiction over Count 1 to compel agency action that has been unreasonably delayed, but finds that jurisdiction is lacking over Count 2 because there has been no final agency action.

#### A.  Sovereign Immunity

As NIGC correctly points out, there must be a valid waiver of the United States' sovereign immunity for the Tribe to bring claims against an agency of the United States and its official, as it does here.  *See, e.g., Block v. North Dakota,* 461 U.S. 273, 287 (1983) ("The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress.").  The principles of sovereign immunity apply equally to federal agencies, officers, and employees acting in their official capacity.  *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *Kentucky v. Graham,* 473 U.S. 159, 165–66 (1985).  The United States' exemption from suit is expressed in jurisdictional terms—that is, federal courts lack subject matter jurisdiction over suits against the United States in the absence of a clear waiver of sovereign immunity.  *See, e.g., Jackson v. Bush,* 448 F. Supp. 2d 198, 200 (D.D.C. 2006) ("[A] plaintiff must overcome the defense of sovereign immunity in order to establish the jurisdiction necessary to survive a Rule

12(b)(1) motion to dismiss.").  Statutes that waive sovereign immunity are strictly construed and

any doubt or ambiguity is resolved in favor of immunity.  *Lane v. Pena,* 518 U.S. 187, 192

(1996).

The Tribe, which seeks only declaratory and injunctive relief, argues that

Congress provided the necessary waiver of immunity in the APA.  The relevant APA provision

states:

> An action in a court of the United States seeking relief other than
> money damages and stating a claim that *an agency or an officer or
> employee thereof* acted or *failed to act* in an official capacity or
> under color of legal authority *shall not be dismissed* nor relief
> therein be denied on the ground that it is against the United States
> or that the United States is an indispensable party.

5 U.S.C. § 702 (emphasis added).  Section 702 clearly waives sovereign immunity when a

plaintiff alleges wrongful inaction by an agency or its officer in a suit for nonmonetary damages,

which is precisely what the Tribe has filed.  *See Cohen v. United States*, 650 F.3d 717, 723 (D.C.

Cir. 2014) ("[T]here is no doubt Congress lifted the bar of sovereign immunity in actions not

seeking money damages.").  Consequently, Section 702 provides an unequivocal and applicable

waiver of sovereign immunity.  *See Clark v. Library of Cong.,* 750 F.2d 89, 102 (D.C. Cir. 1984)

(stating that the APA "eliminated the sovereign immunity defense in virtually all actions for non-

monetary relief against a U.S. agency or officer acting in an official capacity").

The Tribe has made a clear claim of "failure to act."  NIGC maintains that the

Tribe's claims do not qualify for a Section 702 waiver because there has been no "final agency

action," which NIGC alleges is a prerequisite for suits under the APA.  *See* Reply [Dkt. 17] at 1,

3.  This argument conflates the APA's waiver of sovereign immunity and "final agency action."

"Although suits brought under the APA do trigger the 'final agency action' mandate, 'final

agency action' is not a demand that relates to a federal court's jurisdiction but is, instead, an

*exhaustion* requirement that serves to protect the administrative decision-making process insofar as it limits the court's ability to consider an APA claim until an agency has rendered its final decision." *Z Street, Inc. v. Koskinen*, 44 F. Supp. 3d 48, 64 (D.D.C. 2014).  Moreover, the D.C. Circuit has already rejected the argument—that lack of a final agency action means no sovereign immunity waiver—that NIGC advances here.  *See Trudeau v. FTC*, 456 F.3d 178, 187 (D.C. Cir. 2006) ("We also hold that the [sovereign immunity] waiver applies regardless of whether [the agency action in question] constitutes 'final agency action.'").  Consequently, sovereign immunity does not bar the Tribe's claims, irrespective of whether the NOV is deemed a final agency action.

### B.  Jurisdiction over Count 1: Claim Pursuant to APA Section 706(1)

A person adversely affected by agency action, including failure to act, is entitled to judicial review under the APA.  5 U.S.C. § 702; *id.* § 551(13).  The APA "imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it 'within a reasonable time,' 5 U.S.C. § 555(b), and authorizes a reviewing court to 'compel agency action unlawfully withheld or unreasonably delayed,' *id.* § 706(1)." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099-1100 (D.C. Cir. 2003).  However, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004).  Thus, a plaintiff seeking to invoke subject matter jurisdiction under the APA must allege that the defendant had a duty to perform a nondiscretionary act.  *See id*.  Another limitation on judicial review under the APA is where other "statutes preclude judicial review."  5 U.S.C. § 701(a)(1).

"While the APA does not confer subject matter jurisdiction by itself, the APA in conjunction with 28 U.S.C. § 1331 (which gives federal district courts federal question

jurisdiction) gives the Court jurisdiction to compel unreasonably delayed agency action."
*Hamandi v. Chertoff*, 550 F. Supp. 2d 46, 50 (D.D.C. 2008) (*citing Califano v. Sanders*, 430 U.S.
99, 106-07 (1977)); *see also Mashpee*, 336 F.3d at 1099-100 (court has jurisdiction under the
APA and general federal question jurisdiction to compel agency action that has been unlawfully
withheld or unreasonably delayed).  For actions involving delay of an administrative action, "the
lack of a final order by the agency, which might otherwise engender a question about ripeness,
does not preclude this court's jurisdiction."  *Muwekma Tribe v. Babbitt*, 133 F. Supp. 2d 30, 34
(D.D.C. 2000) (citing *TRAC v. FCC*, 750 F.2d 70, 75 (D.C. Cir. 1984)).  If failure to act could
never trigger judicial review, "agencies could effectively prevent judicial review of their policy
determinations by simply refusing to take agency action."  *Cobell v. Norton*, 240 F.3d 1081,
1095 (D.C. Cir. 2001); *see also Sierra Club v. Thomas*, 828 F.2d 784, 795 (D.C. Cir. 1987)
("without such review, the agency could effectively evade its statutory duty of timeliness").

   The conditions for subject matter jurisdiction over Count 1 are satisfied here: the
governing statute, the IGRA, does not preclude judicial review and NIGC has a duty to perform a
nondiscretionary act by ascertainable deadlines and has failed to do so.  First, the IGRA does not
expressly preclude judicial review of the NOV, as NIGC concedes.  *See* Mem. in Support of
Mot. to Dismiss [Dkt. 10-1] (Mem.) at 16 ("IGRA does not explicitly state that judicial review is
precluded for a NOV.").  Contrary to NIGC's claim that IGRA's statutory scheme indicates
congressional intent to preclude judicial review, IGRA allows for review in related situations,
such as when NIGC action effects the closure of a gaming facility.  *See* 25 U.S.C. § 2713(c)
(providing that a "decision of the Commission to give final approval . . . to order a permanent
closure [of a gaming facility] . . . shall be appealable to the appropriate Federal district court").

NIGC also has a mandatory, nondiscretionary duty to issue a decision on an appeal of a notice of a violation by date-certain deadlines.  NIGC does not contend otherwise. To start with, the Chairman of NIGC has authority to issues notices of violation alleging violations of IGRA, which are subject to *de novo* review by the full Commission.  25 C.F.R. §§ 573.3(a); 577.15 (2008).[2]  NIGC regulations required the Commission to designate a presiding official, who, after conducting a hearing within 30 days of the notice of appeal, must make a recommended decision to the Commission after the hearing record closes.  *Id*. §§ 577.4, 577.7, 577.14 (2008).[3]  Thereafter, the Commission must affirm or reverse the presiding official's recommended decision within 30 days after the presiding official issues his recommended decision.  *Id*. § 577.15 (2008) (The "Commission *shall affirm or reverse*, in whole or in part, the recommended decision of the presiding official by a majority vote *within thirty (30) days* after the date on which the presiding official issued the decision.") (emphasis added). The Tribe waived a hearing before a hearing officer, but briefing has been complete and in front of the Commission since August 2011.  *See* Compl. ¶¶ 83, 85; Hoenig Decl., Ex. 28 ¶ 8.  At the very latest, the appeal has been ripe for decision since January 9, 2012 when the Tribe notified NIGC that it would not seek any stay.[4]  Fedman Decl. ¶ 4.  To date, NIGC has not issued a decision on the Tribe's appeal.

[2] NIGC amended many of its regulations in 2012.  The Court cites the regulations in effect at the relevant time.

[3] The Tribe waived its right to a hearing in exchange for an expedited appeal procedure.  *See* Compl. ¶¶ 83, 85.

[4] To be clear, the Court does not agree that a phone call saying that a party *may* ask *in the future* for a stay would justify a failure to decide timely.

The Court's jurisdiction over Count 1 does not depend on whether the NOV constitutes a final agency action or whether the Tribe has exhausted its administrative remedies. *See Babbitt*, 133 F. Supp. 2d at 34 (lack of final agency action and administrative exhaustion do not bar court's exercise of jurisdiction where delay of agency action is at issue). This Court has "jurisdiction under 28 U.S.C. § 1331 ('federal question') to determine whether the agency [is] in violation of § 555(b), and, if it [is], to issue an appropriate order pursuant to § 706." *Mashpee*, 336 F.3d at 1100.[5] The Court will deny NIGC's motion to dismiss with respect to Count 1.[6]

### C.  Jurisdiction over Count 2: Claim Pursuant to APA Section 706(2)

NIGC argues that the Court lacks jurisdiction over Count 2 because there is no final agency action to review, pointing to the undisputed fact that the Tribe has filed an appeal of the NOV, which is pending before the Commission. *See* Mem. at 18-22. Relying on *Sierra Club v. Thomas*, 828 F.2d 784 (D.C. Cir. 1987), the Tribe argues that the NOV can be deemed a final agency action because its practical effects, coupled with NIGC inaction, have the same impact on the Tribe's rights as an outright denial of relief. *See* Opp'n at 20-21.

_____

[5] Although it concedes that the appeal process is taking "longer than the parties would like," Reply at 3, NIGC expends considerable time defending its delay as reasonable under the surrounding circumstances. *See* Mem. at 24-28; Reply at 3, 9-12. It is premature for the Court to address the merits of Count 1.

[6] The Tribe also argues that this Court has jurisdiction pursuant to the Mandamus Act, which provides that "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. The Court need not reach the question of whether a writ of mandamus is available to compel NIGC to issue a decision since it finds it has APA jurisdiction over Count 1. *See Action Alliance of Senior Citizens v. Leavitt,* 483 F.3d 852, 858 (D.C. Cir. 2007) (noting that the existence of an alternative remedy precludes the exercise of mandamus); *Valona v. U.S. Parole Comm'n,* 165 F.3d 508, 510 (7th Cir. 1998) ("[T]he APA . . . authorizes district courts to 'compel agency action unlawfully withheld or unreasonably delayed' without the need of a separate action seeking mandamus").

The APA limits those agency actions that are subject to judicial review:

> Agency action made reviewable by statute and final agency action
> for which there is no other adequate remedy in a court are subject to
> judicial review. A preliminary, procedural, or intermediate agency
> action or ruling not directly reviewable is subject to review on the
> review of the final agency action.

5 U.S.C. § 704. An agency action is final when (1) the action marks the "consummation of the

agency's decisionmaking process" and (2) the action is "one by which rights or obligations have

been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154,

177-78 (1997) (internal quotation marks and citations omitted). Final agency actions may

include "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or

denial thereof, or *failure to act*." 5 U.S.C. § 551(13) (emphasis added). An agency's failure to

act may be the basis for an APA claim pursuant to Section 706(2) when it is the functional

equivalent of a final agency action. *See Sierra Club v. Thomas*, 828 F.2d 783, 793 (D.C. Cir.

1987) ("[A]gency inaction may represent effectively final agency action that the agency has not

frankly acknowledged."). Judicial review is authorized "when administrative inaction has

precisely the same impact on the rights of the parties as denial of relief, [because] an agency

cannot preclude judicial review by casting its decision in the form of inaction rather than in the

form of an order denying relief." *Id*. (citing *Environmental Defense Fund, Inc. v. Hardin*, 428

F.2d 1093, 1099 (D.C. Cir. 1970)).

NIGC's failure to issue a decision on the Tribe's appeal of the NOV is not the

equivalent of a final agency action here. An express denial of relief (*i.e.*, a decision affirming the

NOV) would determine whether, in the Commission's opinion, the Tribe is eligible to operate a

gaming facility at Akela Flats. The Tribe, however, argues that this is essentially what has

happened because the consequences of the NOV are indistinguishable from a temporary or

permanent closure order. It is undisputed that the Tribe closed the Apache Homelands Casino.

*See* Compl. ¶ 80.  NIGC maintains that the NOV was not a closure order and that the Tribe elected to close the casino to avoid the imposition of fines, which were never proposed or assessed by NIGC.  *See* Reply at 6-8.

    As alleged in the Complaint, the Tribe closed the casino, not NIGC.  The Tribe accepted NIGC's proposal to stay the imposition of civil fines if the Tribe ceased gaming at Akela Flats, pending expedited resolution of an appeal of the NOV and subsequent judicial review.  *See* Compl. ¶ 79.[7]  The Court is sympathetic to the Tribe's predicament: it alleges that its financial situation could not withstand the risk of substantial fines threatened by the NOV.  *See id.* ¶¶ 78, 80.  Nonetheless, the Tribe acknowledges that it decided to close the casino due to an overriding interest in avoiding fines: "the Tribe could not afford the substantial fines threatened in the NOV.  *For that reason*, the Tribe closed the Apache Homelands Casino."  Compl. ¶ 80 (emphasis added).  In light of the Tribe's description of its decisions after being issued the NOV, the Court cannot say that the closure of the casino was mandated by the NOV itself.  Therefore, the Court cannot point to NIGC's failure to issue a decision as the functional equivalent of an agency decision "by which rights or obligations have been determined, or from which legal consequences will flow."  *Bennett*, 520 U.S. at 177-78.  Judicial review under Section 706(2) is precluded because there has been no final agency action.  *See Thomas*, 828 F.2d at 793.  The Court will dismiss Count 2.

---

[7] In contradiction to the Complaint allegations, NIGC claims that the *Tribe* proposed to cease gaming in exchange for an agreement by NIGC to withdraw the NOV and waive the imposition of any civil fines.  *See* Reply at 9.  On a motion to dismiss, a court treats the Complaint's factual allegations as true, not a defendant's unsupported assertions.  *See Twombly*, 550 U.S. at 555.

**IV.  CONCLUSION**

For the foregoing reasons, NIGC's motion to dismiss will be granted in part and denied in part.  Count 2 will be dismissed.  A memorializing Order accompanies this Opinion.

Date: May 12, 2015

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge