UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| FORT SILL APACHE TRIBE, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 14-958 (RMC) |
| NATIONAL INDIAN GAMING COMMISSION, *et al.*, | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

This opinion will bore all but the litigating parties because it must recall so much of the procedural history of the case. In sum, the present question is whether the December 9, 2016 letter from the Solicitor of the Department of the Interior to the General Counsel of the National Indian Gaming Commission remains privileged and confidential, which bars the Fort Sill Apache Tribe, whose lands are the subject matter of the letter, from reviewing or appreciably contesting it.

The government asserts that the December 9, 2016 letter (Solicitor's Letter) is a predecisional and deliberative document, but its very terms—provided *ex parte* to the Court—demonstrate that it was a final and considered direction to the National Indian Gaming Commission (NIGC) from the top legal officer at the Department of the Interior (Interior or DOI). The government further argues that the Solicitor's Letter is protected by the attorney work product doctrine, the attorney-client privilege, and is a confidential settlement communication. Only the attorney-client privilege warrants discussion.

As detailed below, the Solicitor's Letter was the outcome of an extensive negotiation process among the Chairman of NIGC; the United States of America; DOI; Secretary

1

S.M. Jewell, now Secretary Ryan Zinke, of DOI; the DOI Assistant Secretary–Indian Affairs; the DOI Solicitor; the Department of Justice (DOJ); and the Fort Sill Apache Tribe (the Tribe). It is now more than *four years* since the Tribe first sued to obtain government action after years of delay. To have DOJ and DOI choose to assert the attorney-client privilege for the Solicitor's Letter, even though they usually waive that privilege for Indian lands opinions, is extraordinarily frustrating for the Tribe.

Nonetheless, the government is entitled to assert the privilege. Having done so here, its privilege protects the Solicitor's Letter from publication. Other than the Solicitor's Letter, however, the Court will grant the Tribe's request to complete the record with materials indirectly considered by NIGC.

## I.  FACTS

The Fort Still Apache Tribe in New Mexico are descendants of the Apache led by the American Indian warrior Geronimo. It has a storied history that should shame the United States: once defeated, the Tribe was forced from its aboriginal lands in New Mexico to imprisonment in Florida under horrible conditions, then to imprisonment in Alabama under horrible conditions, and then to imprisonment in Fort Sill, Oklahoma. These and other details may be critical to a final decision in this matter. For now, it is sufficient to note that the Fort Sill Apache Tribe was listed in 1979 on the first published list of tribes officially recognized by the United States Government.

The Fort Sill Apache have long desired to operate a casino at Akela Flats, New Mexico, which is part of its proclaimed reservation in that State. When it opened a gaming facility at Akela Flats in April 2009, the Chairman of NIGC issued a Notice of Violation (NOV) asserting that the Tribe had violated the Indian Gaming Regulatory Act (IGRA), 25 U.S.C. §§ 2701, 2719, because the lands were ineligible for gaming. Pending an expedited appeal to the

full Commission, the Tribe shuttered the casino. When, after five years the Commission had not yet issued any decision, the Tribe sued in 2014 for unreasonable delay in violation of the Administrative Procedure Act (APA), 5 U.S.C. § 551 *et seq*. By opinion issued on May 12, 2015, this Court refused to dismiss the lawsuit, *see Fort Sill Apache Tribe v. NIGC*, 103 F. Supp. 3d 113 (D.D.C. 2015) (*Ft. Sill I*), and three days later the Commission finally decided that the lands at Akela Flats were ineligible for gaming. Ex. 1, First Am. Compl., Decision and Order (2015 Decision) [Dkt. 30-1]. The Tribe amended its Complaint to allege that the NIGC 2015 Decision was arbitrary and capricious and in violation of law. *See* First Am. Compl. [Dkt. 30]; *see also* Second Am. Compl. [Dkt. 80].

The parties then turned their attention to settlement efforts. The Court belabors this history because it illustrates the constant delays:

- 10/13/15 Joint Motion to Stay (30 days) for settlement discussions among the Chair, NIGC; United States; Department of Interior (DOI); S.M. Jewell, Secretary, DOI; Kevin Washburn, DOI Assistant Secretary, Indian Affairs; Board of Indian Affairs; DOI Solicitor's Office; Department of Justice (DOJ) and the Tribe [Dkt. 42];
- 11/16/14 Jt. Motion to Continue Stay (30 days) [Dkt. 43];
- 12/16/15 Jt. Motion to Continue Stay (90 days) [Dkt. 44];
- 2/01/16 Jt. Status Report and Motion to Continue Stay (47 days) [Dkt. 45];
- 3/17/16 Jt. Motion *Nunc Pro Tunc* to Continue Stay (91 days) [Dkt. 46];
- 6/1/16 Jt. Motion to Continue Stay (76 days) [Dkt. 47];
- 7/6/16 Jt. Motion to Stay (35 days) [Dkt. 48];
- 8/15/16 Court-ordered Status Conference;

- 9/16/16 Telephone conference [Dkt. 65];

- 11/15/16 Status Conference [Dkt. 90];

- 12/2/16 Status Conference [Dkt. 64].

At the August 2016 status conference, the Tribe explained that the Commission had rejected Akela Flats for gaming on the premise that the Tribe was not a federally acknowledged Indian tribe. *See* 8/15/16 Status Conference Tr. at 3 [Dkt. 61]. NIGC had failed "to address that the Bureau of Indian Affairs acknowledged that the [T]ribe was an acknowledged tribe on January 31st, 1979, Federal Register 7(D) page 71194," which predated the "part 83 regs" on which NIGC had relied. *Id.*[1] Recognizing this and other alleged plain errors in the 2015 Decision, the Tribe suggested to Interior that it might be possible to settle the dispute once the correct facts were before all parties. DOI then agreed that "because their earlier letters didn't address the acknowledgment issue, they would review that issue and issue a new letter. That would then get sent over to the [NIGC] and then [the Commissioners] could determine if they're going to reconsider" the 2015 Decision. *Id.* at 4-5.

The parties agreed to such a framework for settlement in October or November of 2015, with numerous commitments along the way as to when the letter would be issued but with no progress on that point for nine months. *Id.* at 5. At the August 2016 status conference, the Tribe asked, "since we changed our position in reliance on this process, if we might not all benefit from a court order saying that a letter will issue and the NIGC will reconsider or not" by a date certain. *Id.* at 6.

---

[1] 25 C.F.R. Part 83 (Procedures for Federal Acknowledgment of Indian Tribes).

DOI did not object to the Tribe's proposal for a Court order to bring conclusion to the discussions, although it sought more time than the Court was willing to allow. DOI then responded, "Sounds good." *Id.* at 8. The *parties* jointly submitted a proposed order to the Court, which it then issued. 9/17/2016 Order [Dkt. 51].

At a status conference on September 16, 2016, counsel for DOI expressed concern that the Court's order (jointly submitted) was overly broad. Asked to explain the difficulty in preparing a letter from the Solicitor, counsel responded that "there are disagreements [between DOI and DOJ] as to the merits of the tribe's claims." 9/16/2016 Status Conference Tr. [Dkt 65] at 6.

Eventually, the Solicitor's Office issued the Letter to NIGC on December 9, 2016 and NIGC decided, in January 2017 (2017 Decision), to refuse to change its 2015 Decision. On motion, this Court determined that the 2017 Decision constituted final agency action subject to appeal by the Tribe. *See* May 25, 2018 Mem. Op. [Dkt 98]. When DOI filed the Administrative Record, Dkt. 100, the Tribe moved to complete the record, or in the alternative, to supplement it, with the Solicitor's Letter and certain other materials dealing with the Tribe's status and federal acknowledgment that had been submitted to DOI (through its counsel at DOJ) as it considered and drafted the Solicitor's Letter. Mot. of Pl. Fort Sill Apache Tribe to Complete and Supplement the Admin. R. With Respect to the January 2017 Decision of the National Indian Gaming Comm'n (Mot.) [Dkt. 102]. DOI opposes the motion in full. Federal Defs.' Opp'n to Pl.'s Mot. to Complete and Supplement the Admin. R. (Opp'n) [Dkt. 103].

## II. LEGAL STANDARD

The Tribe has moved to complete, or in the alternative, to supplement, the administrative record, with the 39 documents it submitted to Interior in support of its claims.[2] Because the Court does not go beyond requiring Interior to complete the administrative record, only the legal standard for a motion to complete is presented below.

In keeping with the principle that a court sitting to review agency action under the APA does not engage in a *de novo* review of the matter, judicial review is generally limited to the administrative record. *Camp v. Pitts*, 41 U.S. 138 (1973). To facilitate such review, when a regulatory challenge is raised the law requires that the agency identify and produce the complete administrative record. *NRDC v. Train*, 519 F.2d 287, 291 (D.C. Cir. 1975). That record "properly consists of the materials before the agency and no more nor less," *see Oceana, Inc. v. Ross*, 290 F. Supp. 3d 73, 78 (D.D.C. 2018), which "includes all materials [the agency] directly or indirectly relied on to make all decisions, not just final decisions." *Nat'l Wilderness Institute*, 2002 WL 34724414 at *3 (citing *AMFAC Resorts, LLC v. U.S. Dep't of the Interior*, 143 F. Supp. 2d 7, 10 (D.D.C. 2001)); *see also CTS Corp. v. EPA*, 759 F.3d 52, 64 (D.C. Cir. 2014) ("It is black-letter administrative law that in an [Administrative Procedure Act] case, a reviewing court should have before it neither more nor less information than did the agency when it made its decision.") (citations omitted). "As part of the record, the Court may consider any document that might have influenced the agency's decision and not merely those documents the agency

---

[2] The Tribe also moves, in the alternative, to admit the documents it submitted to DOI as extra-record evidence. This Circuit has recognized eight exceptions permitting judicial review of non-record evidence in APA cases. *Nat'l Wilderness Inst. v. U.S. Army Corps of Eng'rs*, 2002 WL 34724414 at *3 (D.D.C. October 9, 2002) (enumerating all eight exceptions). Because the Court finds that a review of extra-record evidence is not necessary in this case, analysis of the documents under these exceptions is not required.

expressly relied on in reaching its final determination." *Charleston Area Med. Ctr. v. Burwell*, 216 F. Supp. 3d 18, 23 (D.D.C. 2016) (citing *Nat'l Courier Ass'n v. Bd. of Governors of Fed. Reserve Sys.*, 516 F.2d 1229, 1241 (D.C. Cir. 1975) (quotation omitted)). Indeed, to be complete, the record must include "all materials that 'might have influenced the agency's decision,' and not merely those on which the agency relied in its final decision." *AMFAC Resorts*, 143 F. Supp. 2d at 12 (citation omitted).

An agency enjoys a presumption of regularity with respect to the administrative record it prepares; as the decisionmaker, it is generally in the best position to identify and compile the record. *Pac. Shores Subdiv., Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 5 (D.D.C. 2006) ("[A]bsent clear evidence to the contrary, an agency is entitled to a strong presumption of regularity, that it properly designated the administrative record.") (citation omitted). Therefore, to prevail on a motion to complete the record, a plaintiff must "put forth concrete evidence and identify reasonable, non-speculative grounds for [its] belief that the documents were considered by the agency and not included in the record." *Oceana, Inc. v. Ross*, 290 F. Supp. 3d 73, 78-89 (D.D.C. 2018) (citations omitted). If a court finds that the record produced "clearly do[es] not constitute the 'whole record' compiled by the agency," it will order the agency to complete the record. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419 (1971) (quoting 5 U.S.C. § 706), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977); *see also Charleston Area Med. Ctr.*, 216 F. Supp. 3d at 23.

## III.  ANALYSIS

The Fort Sill Apache Tribe seeks to complete the administrative record with two kinds of documents: the Solicitor's Letter and 39 documents that the Tribe submitted to DOI during its consideration and preparation of the Solicitor's Letter.[3]

### A.     The Solicitor's 2016 Letter

U.S. courts have frequently held the federal government to "the most exacting fiduciary standards" in its relations with the American Indian Nations.  *Seminole Nation v. United States,* 316 U.S. 286 (1942).  The Supreme Court has recently described the fiduciary relationship between the United States and American Indian Tribes as defined by the government's sovereignty or specific statutes and regulations, but not by general common law principles or the common law of trustee fiduciary duties.  *United States v. Jicarilla Apache Nation*, 564 U.S. 162 (2011).  Yet "[t]he attorney-client privilege ranks among the oldest and most established evidentiary privileges known to our law."  *Jicarilla Apache Nation*, 564 U.S. at 165.  Whether, and the extent to which, such a privilege applies as between federal actors has occasioned varied comment over the years.[4]

---

[3] The Tribe also seeks any other documents relied upon by DOI and NIGC in consideration of its 2017 Decision and requests the Court to review *in camera* the privilege designations of the five emails exchanged by the Commission and NIGC counsel between December 9, 2017 and January 12, 2018.  Mot. at 1-2.  Plaintiff's request to supplement the record with these additional documents will be denied because the Court finds that these documents are also protected by the attorney-client privilege.

[4] *See* Nancy Leong, *Attorney-Client Privilege in the Public Sector: A Survey of Government Attorneys*, 20 Geo. J. Legal Ethics 163 (2007); Patricia E. Salkin and Allyson Phillips, *Eliminating Political Maneuvering: A Light in the Tunnel for the Government Attorney-Client Privilege*, 39 Ind. L. Rev. 561 (2006); Todd A. Ellinwood, *In the Light of Reason and Experience: the Case for a Strong Government Attorney-Client Privilege*, 2001 Wis. L. Rev. 1291 (2001); Michael Stokes Paulsen, *Who "Owns" the Government's Attorney-Client Privilege?*, 83 Minn. L. Rev. 473 (1998); Lory A. Barsdate, *Attorney-Client Privilege for the Government Entity*, 97 Yale L. J. 1725 (1988).

The dispute in *Jicarilla Apache Nation* concerned alleged mishandling of an Indian Trust Fund by the DOI and the Department's assertion of the attorney-client privilege to shield five categories of documents:

(1) Requests for legal advice relating to trust administration sent by personnel at DOI to the Office of the Solicitor, which directs legal affairs for the DOI;
(2) Legal advice sent from the Solicitor's Office to personnel at the Interior and Treasury Departments;
(3) Documents generated under contracts between Interior and an accounting firm;
(4) Interior documents concerning litigation with other tribes; and
(5) Miscellaneous documents not falling into the other categories.

*Id.* at 167. Relying on the traditional fiduciary relationship, and applying the common law relating to trusts, the Court of Federal Claims and Court of Appeals for the Federal Circuit ordered disclosure of almost all documents in the first two categories listed above. The Federal Circuit "rejected the Government's argument that, because its duties to the Indian tribes were governed by statute rather than the common law, it had no general duty of disclosure that would override the attorney-client privilege." *Jicarilla Apache Nation*, 564 U.S. at 169.

The Supreme Court disagreed. It stated that "[t]he objectives of the attorney-client privilege apply to governmental clients." *Id*. at 169 (citing Restatement (Third) of the Law Governing Lawyers § 74, Comment *b*, pp. 573-74 (1998)). "Unless applicable law provides otherwise, the Government may invoke the attorney-client privilege in civil litigation to protect confidential communications between Government officials and Government attorneys." *Id.* at 170. The common law exception for fiduciaries was not pertinent because the government "is not a private trustee." *Id.* at 173. "Though the relevant statutes denominate the relationship between the Government and the Indians a 'trust,' *see. e.g.,* 25 U.S.C. § 162a, that trust is defined and governed by statutes rather than the common law." *Id.* (citing *United States v.*

*Navajo Nation*, 537 U.S. 488, 505 (2003) ("[T]he analysis must train on specific rights-creating or duty-imposing statutory or regulatory prescriptions.")).

In sum, "the [Jicarilla Apache Nation] must point to a right conferred by statute or regulation in order to obtain otherwise privileged information from the Government against its wishes." *Id.* at 201. The statute upon which the Nation relied, 25 U.S.C. §§ 161-162a, was insufficient, despite its description of the Secretary as "trustee of various Indian tribes" concerning Indian funds, because "the Government exercises its carefully delimited trust responsibilities in a sovereign capacity to implement national policy respecting the Indian tribes." *Id.* at 178.

Neither party mentions *Jicarilla Apache Nation* and the Fort Sill Apache fail to "point to a right conferred by statute or regulation" to obtain the Solicitor's Letter. That letter clearly qualifies as "[l]egal advice sent from the Solicitor's Office to personnel at the Interior," subject to the attorney-client privilege in civil litigation. *Id.* at 167; *but see In re Bruce R. Lindsey (Grand Jury Testimony)*, 148 F.3d 1100, 1103, 1108 (D.C. Cir. 1998) (recognizing the government attorney-client privilege as "rather absolute in civil litigation" but declining to extend it to permit a government lawyer to "withhold from a grand jury information relating to the commission of possible crimes by government officials and others").

The motion to complete the record with the Solicitor's Letter will be denied.

### B. Documents the Tribe Provided to *Interior*

Confusion and frustration have become mainstays of this case. The latest manifestation presents itself in the parties' conflation of completion of the record and supplementation of the record in APA cases. Completion entails ensuring that the entire record is before the court—the addition of those documents that influenced the agency in its decisionmaking. *Oceana, Inc.*, 290 F. Supp. 3d. at 78. Supplementation involves the addition of

newly created evidence or of documents that were not before the agency when the decision was made, but should have been; supplementation generally requires a showing that an exception to the record rule applies. *Id*. at 77-78; *see also* James N. Saul, *Overly Restrictive Administrative Records and the Frustration of Judicial Review*, 38 Envtl. L. 1301, 1308 (2008).

The Fort Sill Apache moves to complete the record with 39 documents it submitted to DOJ, upon request, to inform Interior's analysis of the status of its lands in New Mexico. The Court will construe the motion as one to the complete the record, because the Tribe argues that these specific documents were "considered by DOI" after submission to its counsel at DOJ. Mot. at 38-39. Agency consideration is a touchstone of a motion to complete the record— the addition of relevant documents that were considered, directly or indirectly, by the agency decisionmaker at the time of the decision are properly part of the record. *See Charleston Area Medical Ctr*, 216 F. Supp. 3d at 23 ("As part of the record, the Court may consider 'any document that might have influenced the agency's decision' and not merely those documents the agency expressly relied on in reaching its final determination.") (citing *Nat'l Courier Ass'n*, 516 F.2d at 1241); *see also Walter O. Boswell Memorial Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984); Saul, 38 Envtl. L. at 1313. By contrast, supplementation entails the addition of newly created evidence or documents not previously before the agency decisionmakers. *AMFAC Resorts*, 143 F. Supp. 2d at 12; *see also* Saul, 38 Envtl. L. at 1319-20.

This is an important distinction because the two implicate very different burdens. A motion to supplement—to look beyond the complete record—generally requires the presence of an exception to the record rule, such as effective frustration of judicial review, *see Camp*, 411 U.S. at 142–43, or a "'strong showing of bad faith or improper behavior' on the part of the agency." *Community for Creative Non–Violence v. Lujan*, 908 F.2d 992, 997 (D.C. Cir. 1990)

(citing *Overton Park*, 401 U.S. at 420). By contrast, on a motion to complete the record, a plaintiff must only "put forth concrete evidence and identify reasonable, non-speculative grounds for [its] belief that the documents were considered by the agency and not included in the record." *Oceana, Inc.*, 290 F. Supp. 3d at 78-79.

The Court finds that the Tribe has done just that. As recited above, the Tribe submitted documents upon request from DOJ, acting as counsel for NIGC and DOI, to DOJ, and DOI relied on those documents to draft the Solicitor's Letter. As memorialized in this Court's order, NIGC committed to review the Solicitor's Letter and, upon that basis, to decide whether to reconsider its 2015 Decision. *See* 9/17/2016 Order. DOJ now contends that the 39 documents submitted by the Tribe itself, referenced liberally in the Solicitor's Letter, are not part of the record. Specifically, it argues that NIGC was not in "possession" of the 39 documents and "did not rely upon or consider the 39 documents during the decisionmaking process." Opp'n at 40.

The argument concerning possession is unpersuasive. DOJ was most certainly in possession of the documents because the Tribe provided them to DOJ directly.[5] Clearly, DOI had possession of the 39 documents because it studied them assiduously and cited them in the Solicitor's Letter sent to NIGC. DOJ argues that the documents were "not submitted to the proper division of an agency," Opp'n at 39, but this argument is rejected on these particular facts. As the parties *all* agreed—including DOJ, DOI and NIGC, among others—the DOI Solicitor reviewed the documents submitted by the Fort Sill Apache Tribe and analyzed the

---

[5] During the long course of DOI's consideration of the status of Akela Flats as Indian lands, the Fort Sill Apache responded to repeated requests for information and documents concerning the Tribe's recognition by the United States. *See* Decl. of Jeffrey Haozous in Supp. of Mot. to Complete and Supplement the Admin. R. (Haozous Decl.) [Dkt. 102-3] ¶ 3. The Tribe submitted such records in three tranches in October 2016. *See* Ex. 1, Haozous Decl., 10/11/16 Letter and Attachments [Dkt. 102-4]; Ex. 2, Haozous Decl., 10/12/16 Letter and Attachments [Dkt. 102-5]; Ex. 3, Haozous Decl., 10/17/16 Letter and Attachments [Dkt. 102-6].

status of its lands at Akela Flats. The Solicitor's Letter reflects and cites the documents as part of the Solicitor's directions to NIGC. An agency may not scrub the record of all evidence that does not support the agency's final decision. *Blue Ocean Inst. v. Gutierrez*, 503 F. Supp. 2d 366, 369 (D.D.C. 2007) (An agency "may not skew the record by excluding unfavorable information but must produce the full record that was before the agency at the time the decision was made."). The complete record is comprised of "all documents and materials directly or indirectly considered by the agency," regardless of outcome. *AMFAC Resorts*, 143 F. Supp. 2d at 12. The issue does not turn on whether specific documents were in the direct, physical possession of agency decisionmakers, but whether they were directly or indirectly *considered* by those decisionmakers. *Id*.

With this in mind, the Court turns to NIGC's consideration of the 39 documents. Having agreed to consider the Solicitor's Letter, and being under a Court order to consider the Solicitor's Letter, the Court concludes and finds that NIGC did consider the entirety of the Solicitor's Letter and thus indirectly considered the 39 documents that were discussed in its analysis. The Court finds that the 39 documents submitted by the Tribe comprise part of the administrative record and will order the production of the documents to complete the record.

## IV.  CONCLUSION

The December 9, 2016 Solicitor's Letter is protected by the attorney-client privilege and the government agencies had a choice whether to withhold it from the Administrative Record or waive the privilege.  They chose to withhold it.  However, as discussed above, the 39 documents submitted by the Fort Sill Apache Tribe to DOJ, at Interior's behest, were part of the materials indirectly considered by NIGC in rendering its 2017 Decision and therefore must be made part of the administrative record so that it is complete.  A memorializing Order accompanies this Memorandum Opinion.


Date: November 28, 2018

_____
ROSEMARY M. COLLYER
United States District Judge